HANOVER NATIONAL BANK v. COCKE.

(December 22, 1900.)

1. *Principal and Agent—Contract—Power of Attorney— Stockholders—Trustee—Banks and Banking.*

Where the shareholders of an insolvent bank authorize a trustee to borrow money to pay its debts and to bind them individually therefor, an action may be sustained against such shareholders by the persons loaning the money.

2. *Parties—Joinder—Trustee —Contract —Shareholders — Banks and Banking.*

Shareholders authorizing a trustee of an insolvent bank to borrow money on their credit are properly parties-defendant in a suit to recover the borrowed money.

3. *Parties—Necessary—Banks and Banking.*

Where a trustee is authorized by the stockholders of an insolvent bank to borrow money on their credit, the bank and trustee are not necessary parties to an action to recover the money borrowed.

4. *Guardian and Ward—Contract—Stock in National Bank.*

A ward is bound by the contract of a guardian who owns shares in an insolvent national bank for his ward, which contract authorizes the trustee to borrow money to pay the bank's liability.

5. *Appeal—Exceptions—Waiver.*

Where no objection is made in the trial court to a defective statement of a good cause of action, the objection is deemed waived, and can be made on appeal.

DOUGLAS, J., dissenting.

CIVIL ACTION by the Hanover National Bank, The Asheville Cotton Mills, The Battery Park Bank, The Merchants

and Farmers . National Bank, S. M. Thomas, Annie L. Weaver, Atlantic National Bank, and any and all other persons interested in the subject-matter of this action who may become parties hereto and contribute to the costs and expenses of this suit, against W. J. Cocke, Julia A. Sluder, Julia A. Sluder (trustee), Julia A. Sluder (executrix), Karl Von-Ruck, Houston Merrimon, J. B. Bostic Company, A. J. Lyman, W. P. Cheeseborough, T. B. Lyman, Erwin Sluder, F. Kingsbury Curtis, Mary E. Benedict (executrix), and Thos. Wilmarth (executor of C. B. Benedict), J. E. Rankin (guardian of Timothy Cocke, Mattie Ella Cocke, Jere Cocke, Phillip Cocke, and Eugene Cocke, minor heirs of W. M. Cocks, and Maria W. Cocke), Carl V. Reynolds and wife Nellie Reynolds, heard by Judge *O. H. Allen,* on complaint and demurrer, at August Term, 1900, of BUNCOMBE Superior Court. From judgment overruling the demurrers, the defendants appealed.

*Davidson, Jones & Adicks,* and *George A. Shuford,* for the plaintiffs.

*Julius C. Martin,* and *F. H. Busbee,* for the defendants. .

CLARK, J. The National Bank of Asheville, becoming embarrassed, closed its doors October 22, 1897. A few days thereafter its stockholders, in meeting duly held, resolved to go into voluntary liquidation of the affairs of the bank, and, in order to secure the speedy and prompt payment of the creditors of the bank—especially its depositors—and to avoid unnecessary expense, authorized the conveyance of all the assets of the bank to W. B. Williamson, trustee, and by an agreement signed by a large number (if not all) of the stockholders empowered and directed said trustee to borrow a sum not exceeding $75,000, at not exceeding 6 per cent interest, payable twelve months after date, to be used in paying off the liabilities of the bank. It is specified in said

contract: "This agreement witnesseth that we, whose names are hereunto subscribed, being shareholders in said bank, each owning and holding the number of shares as set forth, and appear on the books of said bank, do now each for himself, his executors, administrators, and representatives, but not jointly, undertake and agree with each other and with such persons, or corporations, as may agree and shall advance or lend the sum of money which may be necessary to carry into effect the voluntary liquidation of the affairs of the bank, as follows." Here follows an agreement (1) that all the assets of the bank shall be turned over to W. B. Williamson in trust to collect, and convert into cash, and apply to the liabilities of the bank; (2) that the trustee be directed, as above set forth, to borrow not exceeding $75,000, and to pledge as collateral all the assets of the bank, "and for us and in our name, each and severally, but not jointly, to enter into an agreement with such person or persons, corporation or corporations, as will make such loans, that we and each of us, our heirs, executors, and administrators, will contribute, make good, and pay to such lender or lenders, his, its, or their executors, administrators, assigns, or successors, on demand, such parts or proportions of any difference or deficit which may exist at the expiration of 12 months from the date of making said loan between the amount then realized from the collection, or sale, of said assets and resources so pledged as collateral security, after paying therefrom the necessary expense of administering said trust, and the amount then due said lender or lenders, as the number of shares held by each of the signers hereof bears to the aggregate number of shares held by all the signers." The aggregate sum of $75,000 was borrowed by the trustee in divers sums on the faith of the authority conferred on him by the above power of attorney, and the assets of the bank were transferred to him, collected,

and applied to above indebtedness.   Twelve months having
elapsed, this action is brought by the lenders of said sum of
$75,000, or their assignees, after application to said indebt-
edness of all the net proceeds of the assets and resources of the
bank, for the deficiency still remaining, first reducing said
deficiency by the *pro rata* part, according to number of shares,
of those signers, who, on demand, have paid the same.   The
defendants are those signers of the above instrument who
have not paid, and the complaint sets out a table showing the
*pro rata,* according to number of shares, due by each of the
13 defendants, signers of the contract, who have not paid,
and to each of the 10 plaintiffs, and seeks to recover a judg-
ment for each plaintiff for the part due him by each defend-
ant.

There are three demurrers filed.   The first, by Erwin
Sluder, sets up as grounds of demurrer:

1. That the plaintiffs are not parties to the transaction
set up as a foundation of the action.   The contract, on its
face, is a power of attorney to Williamson, as their agent, to
borrow said money, and to bind them for the payment of the
deficiency, after application of the bank assets (which the
complaint avers has been done), severally in proportion to
the number of shares held by each.   The defendants are prin-
cipals, and properly sued as such.

2. Misjoinder of causes of action and parties.   There is
but one cause of action—the breach of the contract—set up,
and the plaintiffs and defendants are the parties thereto.   As
is well stated in the complaint:   The questions which are the
subject of this action are of common and general interest to
all the plaintiffs and all the defendants, and all arise and
grow out of the transaction and agreement herein set forth,
and a litigation by each of the said plaintiffs with each of
said defendants by a separate action upon his individual

claim would subject the plaintiffs and defendants alike to great and unnecessary expense and trouble, and would be oppressive and vexatious." The cause of action is the breach of a single contract. If each plaintiff should bring action against each defendant, there would be 130 actions involving the same facts, the same principles of law, and the same transactions. Had such actions been brought, if they had not been dismissed or held defective for want of other parties, any court would have consolidated them to avoid unnecessary and vexatious costs. There is no misjoinder.

3. His last ground of demurrer is the opposite proposition —that there are not enough parties, in that the National Bank itself and W. B. Williamson should be parties to the action. Williamson was merely the agent of the defendants who were the principals to the contract sued on, and has no interest in this controversy, and is in no wise necessary to the determination of the action; nor is the defunct bank, whose assets, as the complaint avers, have been all applied (which is admitted by the demurrer) to the reduction of defendants' indebtedness, a needed party. If the ex-officers of the extinguished corporation could be served with summons and brought into court, that could serve no end. *Howe v. Harper* (at this term).

The second demurrer is filed by Nellie V. Reynolds and husband. Their demurrer, besides the points raised by the demurrer of Sluder, presents the additional objection that W. J. Cocks, who signed the contract sued on, did so by virtue of certain shares which he held for his wards, one of whom was said Nellie V. Reynolds, who, it seems, has since married; and her demurrer objects that it does not appear that said Cocke had any power, or authority, to sign said contract so as to bind his wards, and, if any liability is created thereby, it is the personal liability of said Cocke, and not of

his said wards.   By the National Bank act, the owner of each share of stock in any National Bank is liable to the creditors of the bank in double its amount.   That liability attached to Cocke as guardian, and not individually.   The action taken was done in a stockholders' meeting, and on its face was for the benefit of the stockholders, and to reduce their respective liabilities.   Certainly nothing to the contrary appears.   Having benefitted by the action taken, the wards are in no position to absolve themselves from the liability incurred in so doing.   If there are any facts to the contrary, they can be set up in the answer.   Cocke is a party to this action.

The third demurrer is by the other wards of said Cocke, and who are now represented by a new guardian, J. E. Rankin.   His demurrer simply duplicates that of Mrs. Reynolds.

Certain other defendants adopted the demurrer of Erwin Sluder.

His Honor properly overruled the demurrers, and gave defendants filing them time to file answers.

At the bottom of the contract sued on is this paragraph: "This instrument shall become effective and operative upon the signing thereof by the owners of two-thirds of the capital stock of the aforesaid bank."   It is not averred in the complaint that the said contract was in fact signed by the owners of two-thirds of the capital stock.   It is extremely improbable that $75,000 would have been loaned on the contract if it had not been so signed, or that, if it had been otherwise, the demurrers would have failed to raise objection for the absence of such averment.   It was called to our attention by argument in this Court by counsel who did not appear below, and who frankly stated he did not know how the fact was.   The objection is not jurisdictional, and therefore is not a matter of which we could take notice *ex mero motu,* or which

BANK *v.* COCKE.

could have been raised by a demurrer *ore tenus* in this Court. The averment should properly have been made in the complaint. But its omission is "a defective statement of a good cause of action," and not "a statement of a defective cause of action," and therefore the omission is cured, as to this appeal, by failing to demur therefor. The test between the two is this: If the defendants had demurred, could the Judge have cured it by permitting the amended averment? If so, the failure to demur waives the objection. If, on the other hand, the defect is so organic that permission to amend can not cure it, then it is a defective statement, of which advantage could be taken here. *Mizzell v. Ruffin,* 118 N. C., 69; *Ladd v. Ladd,* 121 N. C., 119. But, in any event, the defendants have suffered no harm. The points they wished to raise by demurrer have all been presented, and, if there is any doubt as to the contract having been signed by the owners of the requisite number of shares, the failure in that respect can be set up in the answer, if any shall be filed.

No error.